```
14:56:22   1              IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                             DIVISION OF ST. THOMAS AND ST. JOHN
           2
                                            ---
           3
               UNITED STATES OF AMERICA,          )
           4                                      )
                                   Plaintiff,     )
           5                                      )
09:27:42                   vs.                    )   CRIM. NO. 2014-54
           6                                      )
                                                  )
           7   SHERRYMAE MORALES,                 )
                                                  )
           8                        Defendant.    )
                                                  )
           9
                                   REPORTER'S TRANSCRIPT
          10
                                    SENTENCE HEARING
          11
14:56:13                        Thursday, November 12, 2015
          12
                                            ---
          13
               BEFORE:        THE HONORABLE CURTIS V. GOMEZ
          14                  District Judge

          15   APPEARANCES:   OFFICE OF THE UNITED STATES ATTORNEY
08:41:56                      BY: EVERARD POTTER, AUSA
          16                  5500 Veterans Drive Suite 260
                              St. Thomas, Virgin Islands 00802
          17
                                 For the Government
          18
                              OFFICE OF THE FEDERAL PUBLIC DEFENDER
          19                  BY: OMODARE B. JUPITER, FPD
                              1115 Strand Street, Suite 201
          20                  Christiansted, VI 00820-5073

          21                     For the Defendant

          22                                ---

          23
               COURT REPORTER:   CHANDRA R. KEAN, RMR
          24                     Official Court Reporter
                                 Virgin Islands District Court
          25                     St. Thomas, Virgin Islands
```

<u>INDEX</u>

OBJECTIONS/CORRECTIONS TO PRESENTENCE REPORT      3

ALLOCUTION ON BEHALF OF THE DEFENDANT            34

ALLOCUTION BY THE DEFENDANT                      40

ALLOCUTION BY THE GOVERNMENT                     42

IMPOSITION OF SENTENCE BY THE COURT              45

FURTHER PROCEEDINGS                              51

---

<u>PROCEEDINGS</u>

15:47:42   (Court called to order at 3:47 p.m.)

15:47:51   THE CLERK:  Today's proceeding is sentencing,

15:47:53   in the case of United States of America versus Sherrymae

15:47:56   Morales, Criminal Number 2014-54.

15:48:02   MR. POTTER:  Good afternoon, Your Honor.

15:48:03   Everard Potter for the United States.

15:48:04   THE COURT:  Good afternoon, Attorney Potter.

15:48:05   MR. POTTER:  Good afternoon, Judge.

15:48:07   MR. JUPITER:  Good afternoon, Your Honor.

15:48:09   Omodare Jupiter on behalf of Sherrymae Morales, who is

15:48:13   present.

15:48:13   THE COURT:  Okay.  Good afternoon, Attorney

15:48:15   Jupiter.

15:48:15   We're here for sentencing.

15:48:15   OBJECTIONS/CHANGES TO PRESENTENCE REPORT

15:48:17   THE COURT:  Has counsel received the

15:48:19   presentence report in this case?

15:48:20   MR. POTTER:  The government has, Your Honor.

15:48:21   We have no objection to the report.

15:48:23   THE COURT:  I feel like I almost need a hat in

15:48:25   this room.  The sun just pours right in.

15:48:33   You said you have no changes, no corrections?

15:48:37   MR. POTTER:  No changes, Your Honor.

15:48:39   1             THE COURT:  Attorney Jupiter?

15:48:52   2             MR. JUPITER:  Yes, Your Honor.  May it please

15:48:53   3   the Court?

15:48:53   4             THE COURT:  Yes.

15:48:54   5             MR. JUPITER:  With regards to the presentence

15:48:55   6   report, Your Honor -- and I'm looking at the presentence

15:48:58   7   report that's dated August 10th -- I received the

15:49:10   8   presentence report, the addendum, on -- dated

15:49:16   9   October 16th, 2015, so I will proceed.

15:49:20   10       Your Honor, I will point out in the beginning that

15:49:25   11   we -- some of the objections are not objections as far

15:49:27   12   as the accuracy of the trial testimony.  We just do not

15:49:32   13   want to concede, I guess, any particular facts that are

15:49:38   14   made in the presentence report, that they are true.

15:49:43   15       So we will distinguish, so the Court doesn't have

15:49:45   16   to go through those.  We just want to note we're not

15:49:49   17   conceding any facts.  We preserve our right to dispute

15:49:53   18   those facts.

15:49:54   19             THE COURT:  All right.

15:49:55   20             MR. JUPITER:  With regard to paragraph 6, Your

15:49:58   21   Honor, there's a sentence in there that says, "In 2010,

15:50:02   22   Morales approached the leadership at the VING and

15:50:06   23   expressed an interest in returning to full-time

15:50:08   24   leadership."

15:50:09   25       That was certainly testimony at trial, was

15:50:13 1    accurately reported.  We do not concede the truth of

15:50:15 2    that.  And I believe the presentence report writer did

15:50:19 3    indicate that Ms. Morales stated that she was approached

15:50:22 4    by them.

15:50:23 5        With regard to paragraph 9, Your Honor, we agree

15:50:31 6    once again that this was testimony at trial.

15:50:33 7            THE COURT:  Why don't we do this, Attorney

15:50:35 8    Jupiter.

15:50:37 9        The Court will take it as noted on the record that

15:50:39 10   with respect to the accuracy, you take no issue.  With

15:50:44 11   respect to the credibility, though, of the utterance

15:50:46 12   that was made at trial, you reserve your right to

15:50:50 13   challenge the credibility of any utterances made at

15:50:52 14   trial.

15:50:53 15           MR. JUPITER:  Thank you, Your Honor.

15:50:54 16           THE COURT:  Okay.

15:50:55 17           MR. JUPITER:  But actually with paragraph 9 we

15:50:57 18   would ask, we would ask the presentence report writer,

15:51:02 19   with regard to the knowledge of Ms. Morales's rehiring,

15:51:07 20   there was testimony at trial, and we think it should be

15:51:09 21   reflected in the report, that Baron Hignite testified

15:51:13 22   that both Elton Lewis and Linda Cills were both aware of

15:51:18 23   Ms. Morales's rehire by MPSC.

15:51:24 24       And that would be the only addition we would ask

15:51:27 25   that would be placed in there.

| | | |
|---|---|---|
| 15:51:28 | 1 | THE COURT:  Okay.  Very well. |
| 15:51:33 | 2 | MR. JUPITER:  Okay.  Your Honor, moving on to |
| 15:51:35 | 3 | paragraph 17.  And this is dealing with the Guidelines |
| 15:51:40 | 4 | and the enhancement for amount of loss.  And we're not |
| 15:51:44 | 5 | going to repeat all of the arguments we made.  We first |
| 15:51:50 | 6 | point out that today is now November 12th, and so we |
| 15:51:53 | 7 | have new Guidelines in effect, that came in effect |
| 15:51:58 | 8 | November 1st. |
| 15:51:59 | 9 | So with regard to even under the government's |
| 15:52:03 | 10 | calculations or Probation's calculations, this would be |
| 15:52:06 | 11 | a 6-level increase instead of an 8-level increase for a |
| 15:52:13 | 12 | loss that would be more than $40,000 but less than |
| 15:52:16 | 13 | $95,000. |
| 15:52:16 | 14 | That would make her total offense level a 13, and |
| 15:52:21 | 15 | her Guideline range 12 to 18 months, and she would be in |
| 15:52:26 | 16 | Zone C. |
| 15:52:33 | 17 | THE COURT:  You are using which book for that? |
| 15:52:39 | 18 | MR. JUPITER:  Well, Your Honor, I get it off |
| 15:52:41 | 19 | line, but it's the November 2015 guidelines changed the |
| 15:52:47 | 20 | loss.  I did -- |
| 15:52:47 | 21 | THE COURT:  It is a plus 6, yes, in the 2015. |
| 15:52:55 | 22 | I'll ask the probation officer if he can get that.  I |
| 15:52:58 | 23 | just had that book, 2015 Sentencing Guideline. |
| 15:53:17 | 24 | All right.  That's because we used the one book |
| 15:53:22 | 25 | rule, the last book? |

15:53:23  1              MR. JUPITER:  Yes.

15:53:24  2              THE COURT:  What's the government's position on

15:53:25  3       that issue?

15:53:26  4              MR. POTTER:  We have no objection to that, Your

15:53:28  5       Honor.

15:53:28  6              THE COURT:  That we should be using the 2015 as

15:53:36  7       opposed to the 2014?

15:53:39  8              MR. POTTER:  Yes, Judge.

15:53:41  9              MR. JUPITER:  So, Your Honor --

15:53:42 10              THE COURT:  Now, are the 2015 Guidelines to

15:53:46 11       which you refer, are they the ones that are in effect,

15:53:48 12       or are they the proposed?

15:53:50 13              MR. JUPITER:  No, they're in effect now.  They

15:53:53 14       came into effect 11 days ago.

15:53:55 15              THE COURT:  November 1st.

15:53:58 16              MR. JUPITER:  So it's at the time of

15:53:59 17       sentencing.  So those Guidelines decrease her total

15:54:03 18       offense level.  So that would change paragraphs 17 and

15:54:06 19       21, 24.

15:54:08 20              THE COURT:  So 17 would be plus 6, correct?

15:54:11 21              MR. JUPITER:  Yes, Your Honor.

15:54:11 22              THE COURT:  And that would decrease by 2 the

15:54:13 23       ultimate number.  So the adjusted offense level should

15:54:16 24       be 13; is that correct?

15:54:18 25              MR. JUPITER:  Correct, Your Honor.

| | | |
|---|---|---|
| 15:54:19 | 1 | THE COURT: And the total offense level also |
| 15:54:21 | 2 | would be 13, correct? |
| 15:54:23 | 3 | MR. JUPITER: Yes, Your Honor. |
| 15:54:24 | 4 | THE COURT: All right. Okay. Go ahead. |
| 15:54:27 | 5 | MR. JUPITER: Does -- do we need to go through |
| 15:54:29 | 6 | every paragraph that that changes? |
| 15:54:31 | 7 | Because the latter -- obviously, the paragraphs |
| 15:54:37 | 8 | 49 -- well, actually 50, as well as 55, she was in |
| 15:54:54 | 9 | Zone C rather than D -- |
| 15:54:56 | 10 | THE COURT: Not 49. 50, correct? |
| 15:54:58 | 11 | MR. JUPITER: Yes, 50, not 49. |
| 15:55:00 | 12 | THE COURT: Speak into the microphone, please. |
| 15:55:08 | 13 | MR. JUPITER: Guideline range of 12 to |
| 15:55:11 | 14 | 18 months. Guideline range of 12 to 18 months. |
| 15:55:19 | 15 | THE COURT: All right. That's in -- |
| 15:55:21 | 16 | MR. JUPITER: That's in 50. |
| 15:55:23 | 17 | Then in 55, she would be -- it should say that she |
| 15:55:32 | 18 | is in -- Guideline range is in Zone C of the sentencing |
| 15:55:38 | 19 | table. |
| 15:55:38 | 20 | THE COURT: Right. |
| 15:55:39 | 21 | MR. JUPITER: And that would mean that the |
| 15:55:42 | 22 | Court could impose a sentence that would include, that |
| 15:55:48 | 23 | would substitute half of the time in community -- home |
| 15:55:55 | 24 | detention or community incarceration. |
| 15:56:26 | 25 | THE COURT: Okay. Go ahead. |

15:56:27  1          MR. JUPITER:  All right.  And so now, Your

15:56:29  2   Honor, that would be, if the Court is finding our -- our

15:56:35  3   objection is to all of the loss, as the Court has read

15:56:38  4   in our sentencing memo.

15:56:39  5       We can -- our position is that there is no loss

15:56:45  6   amount here, because of -- we believe the Court should

15:56:53  7   look at this, as there was no -- even if the Court --

15:56:57  8   even though there's been a finding that -- by the jury,

15:57:01  9   by the verdict, that there was an intent to defraud,

15:57:04  10  there is no intent to cause a loss as would be necessary

15:57:07  11  for the government to prove loss under either an after

15:57:12  12  loss theory or an intended loss theory.

15:57:15  13      Our other argument, Your Honor, goes with the

15:57:17  14  commentary for calculating loss and credits against

15:57:24  15  loss.

15:57:24  16      And under commentary 3E of USSG 2B1.1, the credits

15:57:37  17  for loss shall be reduced by the following:  The money

15:57:40  18  returned and the fair market value of the property

15:57:46  19  returned, and the services rendered by the defendant to

15:57:48  20  the victim before the offense was detected.

15:57:55  21      This is similar to what we talked about, although

15:57:57  22  we cited the Naegle case in our sentencing memorandum.

15:58:01  23  The Naegle case, as the government points out, they

15:58:05  24  just, they filed the sentencing memorandum today.  But

15:58:09  25  while that case dealt with a government benefits

15:58:13  1   program, it still was dealing with contracted services.

15:58:17  2        And this -- and so it's completely analogous.  Just

15:58:23  3   because it's a different commentary, it's still the same

15:58:26  4   analogy in terms of when someone is rendering the fair

15:58:30  5   market value of their services in return for -- in

15:58:34  6   return for the benefits that they may have received --

15:58:37  7        THE COURT:  Doesn't Naegle counsel that the

15:58:40  8   Court not take sort of a, I don't know, a blanket

15:58:47  9   approach and just say look at the amount received?

15:58:52  10       And what Naegle actually says is that you need to

15:58:55  11  do a little digging down.  And if the Court were to

15:59:00  12  engage in that process, couldn't the Court make a

15:59:05  13  reasonable estimate of the amount of loss?

15:59:09  14       That is, if it uses the salary received as a

15:59:12  15  starting point, not as the end point of any loss

15:59:15  16  calculation?

15:59:19  17       That is, I suspect your issue is this:  The

15:59:22  18  Probation Office calculates loss as the amount of salary

15:59:25  19  for the period, the period that's charged in the

15:59:28  20  offensive conduct, correct?

15:59:30  21       MR. JUPITER:  Well, I think that that's their

15:59:33  22  intent, although I don't think the government -- first

15:59:35  23  of all, this is the government's burden.  I don't think

15:59:38  24  they have shown that all of these payments -- I think

15:59:41  25  some -- most of the payments, the testimony at trial, at

15:59:44  1    least the initial testimony, was that these payments

15:59:48  2    were for salary.

15:59:49  3        I don't think that the government has sufficiently

15:59:51  4    proven that all of these payments were just salary.  I

15:59:56  5    think that's their burden.

15:59:58  6        But, yes, Your Honor, basically, I think that's the

16:00:02  7    intent of the Probation Office, was that the benefits

16:00:07  8    were salary payments that were the product of the fraud.

16:00:12  9    I think that's their position.  We disagree with that

16:00:15  10   position.

16:00:15  11       THE COURT:  All right.  To the extent there's

16:00:17  12   an offset for services rendered, I take it your position

16:00:20  13   is that the government hasn't given any offset or

16:00:22  14   doesn't concede any offset.

16:00:25  15       MR. JUPITER:  That's correct.

16:00:27  16       THE COURT:  All right.  Okay.  Go ahead.

16:00:29  17       MR. JUPITER:  Now we only get to it there,

16:00:31  18   after there's the determination that there is a loss.

16:00:33  19   So I think the government has to show that the loss was

16:00:36  20   either loss that Ms. Morales intended to cause, or that

16:00:43  21   this was an actual loss by the victim.

16:00:47  22       There's a couple of issues here.  Let's first start

16:00:51  23   off with the fact that we're only talking about -- we're

16:00:55  24   talking about alleged fraudulent conduct that the jury

16:01:02  25   found began while she was already employed and getting

16:01:05   1   paid by the Virgin Islands National Guard.

16:01:08   2       Because, remember, she was acquitted on Counts 1

16:01:11   3   through 14.  So this would mean that, you know -- and

16:01:14   4   the government did not even charge anything related to

16:01:20   5   any payments that were made by MPSC.

16:01:27   6       So the government's theory of the case is,

16:01:32   7   regardless of what she did with MPSC, she violated the

16:01:37   8   rules, she violated the rules by getting this other job.

16:01:42   9       I think it's incorrect to say this is -- the

16:01:44   10   government has made out a case of a double dipping

16:01:48   11   scheme, because this is not a case where they say, "Hey,

16:01:51   12   you have one employer and you have two jobs," where

16:01:57   13   someone is double dipping from the same spot.

16:01:59   14       THE COURT:  At trial, was there evidence

16:02:02   15   introduced that indicated that time sheets were

16:02:05   16   submitted for two employers for the same period?

16:02:10   17       MR. JUPITER:  I think they were admitted over

16:02:12   18   objection of counsel, but I believe -- I'm not a hundred

16:02:18   19   percent sure, but I believe I objected to that for that

16:02:20   20   very same reason, Your Honor, is because the MPSC

16:02:24   21   payments were not part of this, of these charges.

16:02:31   22       So -- but I think they were admitted over defense's

16:02:33   23   objection.

16:02:34   24       THE COURT:  All right.  Now, assuming for the

16:02:36   25   sake of argument that there are two sets of time sheets

16:02:40  1    covering the same period of time, would you not concede

16:02:44  2    that that, at least on its face, suggests that there was

16:02:48  3    a claim for compensation from two different entities,

16:02:56  4    and to the extent you cannot split yourself, then that

16:03:00  5    would at least suggest that there would be some

16:03:03  6    objectionable conduct?

16:03:07  7         MR. JUPITER:  Not when there's no testimony of

16:03:12  8    when she completed -- when she did the work for the

16:03:18  9    uncharged conduct.

16:03:19  10        And that's why I say the uncharged conduct not

16:03:22  11   being at issue in this case is so important, is because

16:03:26  12   there's no dispute about when, regardless of the fact

16:03:32  13   that you type in these codes and you say 8:00 to 5:00,

16:03:38  14   8:00 to 5:00, 8:00 to 5:00 -- which, to me, Your Honor,

16:03:41  15   it's -- I mean, you know, that's, that can mean a lot of

16:03:46  16   things, as there are many of us who have 8:00 to 5:00

16:03:50  17   hours who work 80 hours a week.

16:03:54  18        THE COURT:  But the basis for Ms. Morales's

16:03:57  19   salary or claim for salary was a time sheet, correct?

16:04:01  20        MR. JUPITER:  No, I don't think the basis for

16:04:03  21   her salary was the time sheet.  I don't think there was

16:04:06  22   any -- I don't think that there was any --

16:04:09  23        THE COURT:  Well, then, what is the purpose of

16:04:11  24   the time sheet?

16:04:20  25        MR. JUPITER:  I think that the time sheet is

16:04:22  1    something that would probably be required to be

16:04:26  2    submitted that was --

16:04:27  3         THE COURT:  For what purpose?

16:04:30  4         MR. JUPITER:  For job.

16:04:31  5    But I just don't think we can take the next step

16:04:34  6    and --

16:04:34  7         THE COURT:  I appreciate the question, but my

16:04:39  8    question is:  For what purpose?

16:04:41  9    Why would she submit a time sheet?

16:04:43  10        MR. JUPITER:  I think you submit the time sheet

16:04:45  11   because you're required to do so.

16:04:47  12        THE COURT:  I understand you're required to do

16:04:48  13   so, but for what purpose?  Required to do it for what

16:04:51  14   purpose?

16:04:53  15        MR. JUPITER:  To keep your job.  To keep your

16:04:55  16   job.  Your Honor, I know the Court is -- I'm not trying

16:05:02  17   to split hairs here, but when you have uncharged

16:05:06  18   conduct, this is the problem that you have.

16:05:08  19   Because the issue of what these requirements -- all

16:05:10  20   these different rules that you have to follow are not in

16:05:13  21   issue at trial.

16:05:15  22   And that's problematic when the Court is looking at

16:05:19  23   uncharged payments that, to substantiate whether or not

16:05:26  24   VING was defrauded; not only whether they were

16:05:30  25   defrauded, but whether or not they lost services -- the

16:05:34 1    value of services rendered.

16:05:35 2         Because under their theory, she's getting paid for

16:05:43 3    8:00 to 5:00 by two different people.

16:05:47 4         Well, that's fine when you're, when you are charged

16:05:51 5    with both of those people -- when you are charging both

16:05:54 6    of those people and you're saying:  Look, during this

16:05:56 7    time period, this is what she was doing.  She was doing

16:05:59 8    this.

16:05:59 9         So who is she defrauding?

16:06:03 10        Who is the victim?

16:06:04 11        There's only one victim here.  That is VING.  So

16:06:08 12   the only question becomes -- is whether or not she

16:06:10 13   intended any loss, or even rendered any loss, based on

16:06:14 14   her services to VING, not just whether or not she

16:06:17 15   followed the rules for reporting for -- for giving 8:00

16:06:22 16   to 5:00.

16:06:23 17        I don't think -- I think that's a leap that you

16:06:27 18   can't make in a situation when you have the other part

16:06:32 19   of the alleged double dipping not at issue at trial, and

16:06:37 20   you don't have any testimony suggesting that the work

16:06:41 21   that was needed to be done was not performed.

16:06:46 22        THE COURT:  All right.  Any other objections?

16:06:48 23        You'll get the last word, but I'm going to hear

16:06:50 24   from the government.

16:06:52 25        MR. JUPITER:  Your Honor, I -- since it's the

16:06:55  1    government's burden, Your Honor, I'll wait till after

16:06:58  2    they speak to --

16:06:59  3                THE COURT:  All right.

16:07:00  4                MR. JUPITER:  -- respond.

16:07:02  5                THE COURT:  Attorney Potter?

16:07:04  6                MR. POTTER:  Thank you, Judge.

16:07:11  7        Your Honor, when the defendant initially came up

16:07:17  8    with a scheme to defraud the Guard and she applied for

16:07:25  9    the position, and she was hired knowing that she was

16:07:29  10   already working a 9:00 to 5:00 job, she intended, when

16:07:36  11   she submitted that application, when she said, "Yes, I

16:07:39  12   am going to take your job at the National Guard," at

16:07:44  13   that point she intended to cause loss, to get moneys for

16:07:51  14   work that she know she would not --

16:07:53  15               THE COURT:  But you're slapping a label.  My

16:07:55  16   question is:  How do you get to the loss amount?

16:07:58  17       What is it that you use to quantify loss in this

16:08:01  18   case?

16:08:02  19               MR. POTTER:  The loss amount is the moneys that

16:08:05  20   the National Guard spent, obligated to pay Ms. Morales's

16:08:16  21   salary.

16:08:17  22               THE COURT:  Are you saying that there's no need

16:08:19  23   for -- or no offset to which Ms. Morales is entitled?

16:08:25  24               MR. POTTER:  We argue that there's no offset,

16:08:27  25   Judge.  She obtained --

| | | |
|---|---|---|
| 16:08:28 | 1 | THE COURT:  Doesn't the Guideline say there's |
| 16:08:30 | 2 | an offset or credit to which the defendant is entitled |
| 16:08:34 | 3 | for services rendered? |
| 16:08:37 | 4 | MR. POTTER:  But, Judge, I don't know that I |
| 16:08:38 | 5 | read -- |
| 16:08:39 | 6 | THE COURT:  My question is a yes or no, then |
| 16:08:41 | 7 | you can explain. |
| 16:08:42 | 8 | MR. POTTER:  I will say no, Judge. |
| 16:08:44 | 9 | THE COURT:  You're saying the Guidelines don't |
| 16:08:46 | 10 | say that? |
| 16:08:47 | 11 | MR. POTTER:  Not 3E of the Application Notes. |
| 16:08:56 | 12 | I don't think that's what 3E says. |
| 16:09:00 | 13 | It says moneys returned -- well, Ms. Morales was |
| 16:09:03 | 14 | paid for -- I think she received $90,000 or so from the |
| 16:09:08 | 15 | Virgin Islands National Guard -- |
| 16:09:11 | 16 | THE COURT:  Doesn't it say at note E: |
| 16:09:13 | 17 | Credits against loss.  Loss shall be |
| 16:09:15 | 18 | reduced by the following:  The money returned |
| 16:09:17 | 19 | and the fair market value of the property |
| 16:09:18 | 20 | returned and the services rendered by the |
| 16:09:22 | 21 | defendant, or other persons acting jointly |
| 16:09:24 | 22 | with the defendant, to the victim before the |
| 16:09:26 | 23 | offense was detected. |
| 16:09:27 | 24 | Now are you saying that services rendered is not |
| 16:09:29 | 25 | something to be considered? |

16:09:31  1          MR. POTTER:  Not in that context, Judge.

16:09:32  2          THE COURT:  Well, then, what is the purpose of

16:09:35  3   the term "services rendered" in Application Note E?

16:09:41  4          MR. POTTER:  I think it has to do with the,

16:09:46  5   where it says "the fair market value of the property

16:09:49  6   returned and the services rendered," I group those

16:09:53  7   together, Judge, that there are certain, maybe things

16:09:59  8   that Ms. Morales -- not Ms. Morales -- but a defendant

16:10:04  9   would have expended in obtaining the contract or in

16:10:08  10  executing the contract and, if, if prior to the

16:10:16  11  detection of the offense, those items are returned --

16:10:20  12         THE COURT:  Why are you limiting it to a thing

16:10:24  13  returned?

16:10:24  14      My question was a very specific one.  "Services

16:10:27  15  rendered," what does that capture?

16:10:32  16      As I read it, "Loss shall be reduced by the

16:10:35  17  following," and then it lists three categories.  The

16:10:37  18  first is money returned, fair market value of the

16:10:40  19  property returned, and services rendered.

16:10:45  20      There are three categories of things that will

16:10:47  21  cause -- or can be the basis for a credit as against any

16:10:52  22  loss.

16:10:54  23         MR. POTTER:  Well, my --

16:10:54  24         THE COURT:  And you're only considering one

16:10:56  25  thing, if they returned money, as if someone gets some

16:11:00 1    money and chooses to return it.  But you're not giving

16:11:02 2    any weight to services rendered.

16:11:04 3        And my question is:  What do you -- what is the

16:11:06 4    government's position that the -- with respect to the

16:11:09 5    term "services rendered" and its meaning in the

16:11:14 6    Application Note?

16:11:14 7              MR. POTTER:  "Services rendered" is not a

16:11:17 8    clause by itself.  It's the fair market value of the

16:11:22 9    property returned and the service rendered.  As opposed

16:11:27 10   to, if there's a comma, money returned, comma, fair

16:11:31 11   market value of property returned, comma, and services

16:11:34 12   rendered, services rendered has to do with the value and

16:11:41 13   fair market value of the property returned.  I don't

16:11:44 14   think it's an accident that that comma is not there.  I

16:11:48 15   think they ought to be read together.

16:11:51 16       So it's two things, the money returned and the fair

16:11:55 17   market value of property returned and services rendered.

16:11:59 18             THE COURT:  How can you reconcile that, fair

16:12:02 19   market value of property returned and the services

16:12:04 20   rendered?  It's two different types of -- two different

16:12:09 21   species.

16:12:10 22       Fair market value of property.  What does that have

16:12:14 23   to do with services rendered?

16:12:22 24       If the government were to give Ms. Morales a car,

16:12:25 25   and she returned the car a year later, or she took a car

16:12:29  1    unlawfully and returned it a year later, it would have

16:12:31  2    been -- some depreciation would have occurred, and the

16:12:34  3    fair market value of it, I think, would have gone down.

16:12:38  4    And if she returned it before her crime were detected,

16:12:41  5    she would be entitled to an offset.

16:12:43  6         What does that have to do with services rendered?

16:12:46  7              MR. POTTER:  Well, Judge --

16:12:46  8              THE COURT:  Fair market value generally

16:12:49  9    attaches to property, usually tangible things.  And fair

16:12:53 10    market value is affected by any number of things, one of

16:12:56 11    which is depreciation.

16:12:59 12         How can that be reconciled with your view that

16:13:02 13    somehow that's tied to services rendered?

16:13:05 14              MR. POTTER:  Well, Judge, that's just my

16:13:07 15    interpretation of the statute.

16:13:08 16              THE COURT:  Okay.  Assuming for the sake of

16:13:10 17    argument that it's three separate categories, then how

16:13:13 18    does it affect your position?

16:13:15 19         That it's money returned, fair market value of

16:13:18 20    property, and services rendered.  There are three

16:13:21 21    categories by which you can credit.

16:13:27 22         Does that affect your position?

16:13:29 23              MR. POTTER:  Yes, it would, Judge, and clearly

16:13:31 24    that would be something that would be offset.

16:13:37 25         In this case, how that, how those services rendered

16:13:40   1   would be offset, I would submit that when Ms. Morales

16:13:49   2   received her -- she received two payments, Judge, one

16:13:51   3   from MPSC and one from the Virgin Islands National

16:13:55   4   Guard.  And the payment, the moneys that she received,

16:13:58   5   basically came from one source, and that would be the

16:14:01   6   National Guard.

16:14:02   7        Because the amount of -- the contract that the MPSC

16:14:08   8   had was a contract that they had with the National

16:14:11   9   Guard.  The MPSC-- the National Guard paid the MPSC.  In

16:14:16   10   return, the MPSC paid Ms. Morales.

16:14:19   11        So we really have one entity, which is the National

16:14:22   12   Guard, that is spending moneys on Ms. Morales.  They

16:14:28   13   intended that they --

16:14:29   14             THE COURT:  Well, how can you reconcile that?

16:14:31   15   That is, she was, she had two different employers, did

16:14:36   16   she not?

16:14:37   17             MR. POTTER:  She had two different employers,

16:14:39   18   Judge.

16:14:39   19             THE COURT:  But didn't you just say, before I

16:14:41   20   asked the question, that it's just the National Guard?

16:14:43   21   She's not employed by just the National Guard.  She's

16:14:46   22   employed by MPSC and she's also employed by the V.I.

16:14:51   23   National Guard.

16:14:53   24             MR. POTTER:  Yes, Judge.

16:14:53   25             THE COURT:  All right.

16:14:54  1        MR. POTTER:  I'm just saying that the moneys

16:14:55  2   that the MPSC paid Ms. Morales's salary came from the

16:15:01  3   National Guard.  And the National Guard, which is for

16:15:05  4   her ESGR, the National Guard also paid Ms. Morales for

16:15:10  5   her military tech position.

16:15:13  6        THE COURT:  You're saying they also paid her as

16:15:15  7   though they are paying her for the MPSC.  MPSC, is that

16:15:19  8   a private entity?

16:15:20  9        MR. POTTER:  It's a private entity that has a

16:15:22  10  contract with the National Guard.

16:15:24  11       THE COURT:  Right.  So she didn't go to the

16:15:26  12  National Guard to get the MPSC position, did she?

16:15:30  13       MR. POTTER:  No, Judge.

16:15:30  14       THE COURT:  So why are you equating the two?

16:15:32  15    It sounds -- when I asked the question, you say

16:15:37  16  you're not, but it sounds like you are.  You're

16:15:39  17  suggesting that somehow because the National Guard hires

16:15:41  18  a private entity to provide some services, that somehow

16:15:46  19  anyone who works for that private entity is de facto and

16:15:53  20  by law somehow an employee of the United States.

16:15:58  21    Is that what you're saying?

16:15:59  22       MR. POTTER:  That's not my argument, Judge.

16:16:02  23       THE COURT:  Okay.

16:16:04  24       MR. POTTER:  I think it's simply that the

16:16:07  25  moneys that pays -- that pays Ms. Morales's --

16:16:12  1          THE COURT:  If the United States Government

16:16:14  2   hires M&M Mars candy company to provide chocolate bars

16:16:21  3   for members of the military, you're saying that the

16:16:24  4   employees of M&M Mars are somehow employees of the

16:16:28  5   United States Government?

16:16:30  6          MR. POTTER:  That's not my argument, Judge.

16:16:32  7          THE COURT:  Okay.  You're saying that somehow

16:16:36  8   their salary from a private entity is a salary derived

16:16:39  9   or that is sourced from the United States Government?

16:16:44  10         MR. POTTER:  Ultimately, that was the

16:16:48  11  originating entity that --

16:16:51  12         THE COURT:  All right --

16:16:52  13         MR. POTTER:  -- these funds came from, Judge.

16:16:54  14  That's all I'm saying.

16:16:55  15         THE COURT:  Okay.  Go ahead.

16:16:57  16         MR. POTTER:  When Ms. Morales decided to keep

16:17:03  17  both positions, again, she knows, and she knew, that she

16:17:11  18  cannot work 40 hours a week simultaneously for two

16:17:16  19  employers.  It's physically impossible to do.

16:17:23  20     And in her accepting the job with the National

16:17:27  21  Guard, she knew that she would not have been able to

16:17:31  22  honestly give the National Guard the eight hours a day,

16:17:37  23  five days a week, 8:00 to 5:00 Monday to Friday,

16:17:42  24  services that she was indicating that she was going to

16:17:46  25  give them, because at the same time she was working

| | | |
|---|---|---|
| 16:17:49 | 1 | Monday through Friday, 8:00 to 5:00, for the MPSC. |
| 16:17:55 | 2 | And it is at that point that the fraud and the |
| 16:17:59 | 3 | intended loss stepped in.  And she continued that from, |
| 16:18:12 | 4 | according to the jury's verdict, from August 2010 to |
| 16:18:18 | 5 | June 2011. |
| 16:18:19 | 6 | So for the defense to say that there is no loss, |
| 16:18:23 | 7 | there is a loss, just by the fact that what she proposed |
| 16:18:29 | 8 | to do was an impossibility, and that she knew that it |
| 16:18:34 | 9 | was an impossibility, and yet still she ventured to do |
| 16:18:37 | 10 | it. |
| 16:18:42 | 11 | So we disagree with -- |
| 16:18:44 | 12 | THE COURT:  Okay.  You're not, I think, getting |
| 16:18:46 | 13 | to the core of my question, which is:  How do you |
| 16:18:49 | 14 | quantify the loss? |
| 16:18:50 | 15 | Assuming for the sake of argument that Ms. Morales |
| 16:18:54 | 16 | is entitled to a credit, an offset for services |
| 16:18:59 | 17 | rendered, how would you credit that? |
| 16:19:02 | 18 | MR. POTTER:  Well, Judge, it might be difficult |
| 16:19:04 | 19 | to calculate, because in truth and in fact, if |
| 16:19:09 | 20 | Ms. Morales is working -- |
| 16:19:11 | 21 | THE COURT:  Well, why don't we start -- let me |
| 16:19:13 | 22 | ask you this:  What is the salary received for that |
| 16:19:16 | 23 | period of time? |
| 16:19:18 | 24 | MR. POTTER:  It was approximately $90,000, Your |
| 16:19:22 | 25 | Honor. |

| | | |
|---|---|---|
| 16:19:22 | 1 | THE COURT:  All right.  And what -- how would |
| 16:19:26 | 2 | you quantify the value of services rendered to offset |
| 16:19:29 | 3 | that? |
| 16:19:32 | 4 | MR. POTTER:  Well, because Ms. Morales cannot |
| 16:19:38 | 5 | work a 40-hour week for the National Guard and at the |
| 16:19:42 | 6 | same time work a 40-hour week for the MPSC, it's |
| 16:19:48 | 7 | difficult -- even though we know there is a loss, it may |
| 16:19:51 | 8 | be difficult to calculate how that loss is attributed -- |
| 16:19:54 | 9 | what percentage of the loss is attributed strictly to -- |
| 16:19:58 | 10 | that is not the National Guard. |
| 16:19:59 | 11 | Our position is that the entire loss -- |
| 16:20:01 | 12 | THE COURT:  But Attorney, Attorney Potter, I |
| 16:20:04 | 13 | thought that there was evidence adduced during the |
| 16:20:07 | 14 | course of the trial where various witnesses testified |
| 16:20:11 | 15 | about Ms. Morales's work; that is, she was working for |
| 16:20:17 | 16 | the National Guard, was she not? |
| 16:20:19 | 17 | MR. POTTER:  Yes, sir. |
| 16:20:19 | 18 | THE COURT:  And there was testimony about her |
| 16:20:22 | 19 | work, the quality of her work over that period of time, |
| 16:20:27 | 20 | was there not? |
| 16:20:28 | 21 | MR. POTTER:  Yes, Judge. |
| 16:20:29 | 22 | THE COURT:  So would it not stand to reason |
| 16:20:32 | 23 | that there were some services that were rendered? |
| 16:20:35 | 24 | MR. POTTER:  We would have to concede that |
| 16:20:38 | 25 | there were some services that were rendered. |

| | | |
|---|---|---|
| 16:20:41 | 1 | Ms. Morales did in fact do work for the National Guard. |
| 16:20:45 | 2 | THE COURT:  And was there any testimony |
| 16:20:47 | 3 | suggesting that there was no service rendered? |
| 16:20:54 | 4 | MR. POTTER:  My recollection of the testimony, |
| 16:20:56 | 5 | no one testified that Ms. Morales did not do work. |
| 16:20:59 | 6 | THE COURT:  All right.  Okay.  All right. |
| 16:21:04 | 7 | Anything else? |
| 16:21:06 | 8 | MR. POTTER:  Only to the extent, Judge, that |
| 16:21:08 | 9 | whether or not Ms. Morales did work, it is still |
| 16:21:13 | 10 | impossible for her to do 40 hours a week, 5 days, Monday |
| 16:21:20 | 11 | through Friday, for the National Guard and -- |
| 16:21:23 | 12 | THE COURT:  Now, the evidence that you would |
| 16:21:25 | 13 | point to -- it is your burden -- what would that be? |
| 16:21:28 | 14 | MR. POTTER:  Because at the same time she was |
| 16:21:30 | 15 | supposedly working 40 hours a week, Monday through |
| 16:21:34 | 16 | Friday, 9:00 to 5:00, for the MPSC. |
| 16:21:37 | 17 | THE COURT:  Right.  I know that's your |
| 16:21:41 | 18 | argument.  What evidence would you point the Court to, |
| 16:21:43 | 19 | to support that argument? |
| 16:21:44 | 20 | MR. POTTER:  Well, the argument from |
| 16:21:46 | 21 | Mr. Hignite, who testified that Morales worked -- that |
| 16:21:50 | 22 | the hours that Morales worked for him, I think in her |
| 16:21:56 | 23 | contract it indicated that if she had need to work |
| 16:21:58 | 24 | outside those regular 9:00 to 5:00, Monday to Friday |
| 16:22:04 | 25 | hours, that she had to come and get authorization from |

16:22:06  1     him, and that she never did.

16:22:09  2          So she is in fact working Monday through Friday,

16:22:16  3     9:00 to 5:00, for MPSC, and in fact working Monday

16:22:21  4     through Friday, 9:00 to 5:00, for the National Guard,

16:22:27  5     and she cannot physically do that.

16:22:29  6          THE COURT:  All right.  So you're saying

16:22:30  7     there's record evidence that indicates that her contract

16:22:35  8     with MPSC was 9:00 to 5:00, and there's exhibits --

16:22:41  9     there are exhibits in the record that indicate that her

16:22:44  10    submission or her time sheets for the National Guard

16:22:47  11    were for a period that overlapped?

16:22:50  12         MR. POTTER:  Yes.  And additionally, the

16:22:52  13    testimony from the National Guard -- it may have been

16:22:56  14    General Lewis again -- was that Ms. Morales was hired to

16:23:00  15    work Monday through Friday, 9:00 to 5:00; that if he

16:23:05  16    knew that she was working anywhere else during that

16:23:08  17    time, that he would not have permitted it; and

16:23:11  18    specifically that he told her -- that she came to him

16:23:14  19    and indicated to him that this is what she desired to

16:23:17  20    do, and he asked her if she was crazy, that that's not

16:23:20  21    permitted.  "You cannot do that."

16:23:22  22         So again, when she did it, she intended to commit

16:23:26  23    fraud and that's what she did.

16:23:27  24         THE COURT:  All right.  Thank you.

16:23:29  25         Attorney Jupiter, I'll give you the last word on

16:23:31  1    the objection.

16:23:34  2         MR. JUPITER:  Your Honor, only with regard to

16:23:36  3    the, what the Court has pointed out with regard to

16:23:40  4    credit, the credit against the loss and fair market

16:23:43  5    value of the services rendered.  If the Court were to

16:23:48  6    look at --

16:23:49  7         THE COURT:  Well, do you agree with the

16:23:50  8    government that there are only two categories in the

16:23:52  9    credit?  That is, is it fair market value of property,

16:23:57  10   and is that a separate thing from services rendered?

16:24:01  11        MR. JUPITER:  No, Your Honor, I agree with what

16:24:03  12   the Court said in response to that, that "services

16:24:06  13   rendered" means services rendered by the defendant.  The

16:24:09  14   fair market value of the services rendered, which in

16:24:12  15   this instance is, this instance is the job that

16:24:16  16   Ms. Morales was hired by the Virgin Islands National

16:24:19  17   Guard to do, and that by everyone's account, even in the

16:24:23  18   government's opening --

16:24:24  19        THE COURT:  So you would agree there are three

16:24:26  20   categories.  It would be money returned, fair market

16:24:28  21   value of property, and the value of services rendered.

16:24:32  22        MR. JUPITER:  Yes, Your Honor.

16:24:33  23        THE COURT:  All right.

16:24:34  24        MR. JUPITER:  So, Your Honor, with respect to

16:24:36  25   the government's argument --

16:24:37 1          THE COURT:  And how would you calculate the

16:24:39 2     value of the services rendered?

16:24:42 3          MR. JUPITER:  I would calculate it by the

16:24:45 4     salary that she was, the salary that the VING placed

16:24:51 5     on -- apprised her value to be -- apprised her work to

16:24:55 6     be, which is the salary she was given.

16:24:59 7          THE COURT:  All right.

16:25:02 8          MR. JUPITER:  So if the government contends --

16:25:03 9     if the Court accepts that the $90,000 was paid in

16:25:06 10    salary, the $90,000 was the fair market value of the

16:25:12 11    services that were rendered, the 90,000 and change.

16:25:21 12         THE COURT:  Okay.  Thank you, Attorney

16:25:22 13    Jupiter.

16:25:23 14       Is that it for your objections?  Any others, or do

16:25:26 15    they all fall under the same category?

16:25:26 16         MR. JUPITER:  They all fall under the same

16:25:28 17    category.

16:25:28 18         THE COURT:  Okay.  Very well.  Before the Court

16:25:29 19    is the objection for the defense with respect to the

16:25:32 20    loss calculation.

16:25:32 21       This is not an easy issue.  There is no question

16:25:39 22    that the Guidelines contemplate for this type of offense

16:25:44 23    that the Court has to undertake some sort of loss

16:25:47 24    calculation.

16:25:48 25       The Court is not persuaded that the loss

16:25:51  1    calculation determination is as the government suggests.

16:25:56  2    Indeed, if the Court were to do that, then the beginning

16:26:01  3    and the end of the undertaking would be just look at the

16:26:04  4    amount of money received by the defendant.

16:26:10  5        While that's an easy way to come to a loss

16:26:12  6    calculation, the Court doesn't feel that it

16:26:16  7    appropriately contemplates what the Sentencing

16:26:20  8    Guidelines require, what the case law suggests that the

16:26:23  9    Court ought to do.  There ought to be something more.

16:26:26  10       And the Third Circuit, there aren't many wage cases

16:26:31  11   that address this issue, but there are enough cases that

16:26:33  12   suggest that it is not the, just a blanket look at the

16:26:39  13   salary or the thing received; the Court has to consider

16:26:41  14   those offsets.

16:26:44  15       And in this case it is difficult, because the

16:26:50  16   testimony, as the Court recalls it, is that Ms. Morales

16:26:53  17   performed services for the Virgin Islands National

16:26:57  18   Guard.  They were well-received and she was

16:27:01  19   well-regarded.  At the same time, she performed services

16:27:04  20   for MPSC, they were well-received and she was

16:27:09  21   well-regarded.

16:27:09  22       The problem for Ms. Morales, however, and the thing

16:27:12  23   that brings this loss calculation before the Court and

16:27:21  24   that makes it fairly difficult, is the record indicates

16:27:24  25   that she was to be working for two employers at the same

time, that is, 9:00 to 5:00.

And significantly the Court is not persuaded that a person can provide 40 hours to two separate employers at the same 40-hour period.  Mathematically, it's just not possible.

The Court is to come up with a reasonable estimate of the loss.  It does not require mathematical precision.  In some cases, at least one that the Court recalls from the Third Circuit, the government, to meet its burden -- since the burden is on the government and always on the government when it comes to sentencing, and by a preponderance of the evidence -- in some cases the government has undertaken a survey, in some cases the government has undertaken a little bit more, to determine the value of the services rendered or the value of the benefit, and again, to determine whether there's an appropriate offset.

The Court found a case where circumstances similar to those as Ms. Morales occurred, and that's United States versus Burns.  It's not in our circuit.  It's in the Second Circuit.  But in that case Mr. Burns received payments from the government.  At the same time, he was quite resourceful, it seems, and enrolled at Harvard University.  He couldn't do both at the same time.

Like Ms. Morales, Mr. Burns received, was

16:29:16   1    well-regarded and claims that he fulfilled all the

16:29:19   2    obligations of his employment.  And the conclusion was

16:29:22   3    that you can't do two things for two masters for the

16:29:27   4    same time period.

16:29:29   5        And the Court in that case was able to subtract the

16:29:34   6    amount of hours that the defendant spent at Harvard and

16:29:40   7    offset that from the loss calculation.

16:29:48   8        In this case, where you have identical hours, it's

16:29:52   9    very difficult.  But the Court doesn't feel that means

16:29:56   10   we take the easy route.  The Court, given the evidence

16:30:03   11   adduced during the course of the trial and the work

16:30:06   12   performed for each entity, the Court is more inclined to

16:30:09   13   apply a 50 percent reduction to the loss calculation,

16:30:15   14   since Ms. Morales worked for two entities over the same

16:30:20   15   period of time, each of which highly regarded her

16:30:24   16   services and each of which acknowledged that she did

16:30:27   17   indeed perform services.

16:30:30   18       So it is not mathematically precise.  I don't

16:30:34   19   believe the case requires that it be mathematically

16:30:37   20   precise.  The Court has to give a reasonable estimate,

16:30:39   21   and that is the best estimate that the Court can come

16:30:42   22   to.

16:30:42   23       So for loss purposes, the Court will assign a loss

16:30:46   24   value of $45,000.  That is based on the 90,000 that she

16:30:52   25   received over the period.  So that is a 45,000 loss

16:31:00  1    amount, which is in excess of 40,000 under 2B1.1, but

16:31:11  2    less than 95,000.

16:31:14  3         So the Court will add 6, which I don't think

16:31:21  4    changes the calculation at the end.  But for loss

16:31:25  5    purposes, the loss is reduced by 50 percent.

16:31:30  6         All right.  Attorney Jupiter, do you wish to

16:31:32  7    allocute?

16:31:33  8              MR. JUPITER:  Your Honor, in light of the

16:31:35  9    Court's ruling, first of all, obviously we reserve our

16:31:40  10   objection.  But, Your Honor, we also believe

16:31:44  11   paragraph -- how is that going to affect paragraph 60

16:31:49  12   with regards to restitution?  We object to the 90,000.

16:31:52  13             THE COURT:  No, right -- let me be clear.

16:31:55  14        The amount of loss, an amount that needs to be the

16:31:59  15   calculated as restitution would be 45,000.  That's how

16:32:03  16   it would affect restitution.

16:32:07  17             MR. JUPITER:  Okay, Your Honor.  We ask that

16:32:08  18   that be changed in the presentence report.

16:32:10  19             THE COURT:  Yes.  That's paragraph 6-0,

16:32:13  20   correct?

16:32:13  21             MR. JUPITER:  Yes, that was paragraph 60, 6-0.

16:32:34  22             THE COURT:  That would be actually -- for loss

16:32:36  23   purposes, so the Court is clear, the Court is halving

16:32:39  24   the government's, so it would be 45,426.  That would be

16:32:46  25   the loss amount in the respective loss paragraphs and in

16:32:48  1    the restitution paragraph.

16:32:51  2           Go ahead, Attorney Jupiter.  You can allocute.

16:32:54  3              ALLOCUTION ON BEHALF OF THE DEFENDANT

16:32:54  4           MR. JUPITER:  Thank you, Your Honor.

16:32:56  5    Your Honor, as we tried to illuminate in our

16:33:01  6    sentencing memorandum, Ms. Morales did not only do an

16:33:06  7    exemplary job, as the Court is remarking, on the

16:33:11  8    testimony provided by both her supervisors and peers,

16:33:15  9    but I think we tried to show, not only through our

16:33:19  10   sentencing memorandum, but through the many letters of,

16:33:23  11   the commendations that Ms. Morales has many years, not

16:33:25  12   only a commendable military service, but she has many

16:33:30  13   years of mentoring young women in the Virgin Islands to

16:33:35  14   pursue careers.

16:33:38  15       She has a long career of providing a service to the

16:33:42  16   community.  She has a long career of providing

16:33:47  17   professionalism every place where she has gone.  She has

16:33:52  18   received service medals.

16:33:55  19       She has constantly strived throughout her life to

16:34:01  20   continue learning, even to this day, even while these

16:34:05  21   charges were pending, this prosecution was pending.

16:34:08  22   After relocating to Maryland, she has enrolled and went

16:34:11  23   back to school, and in six months she is going to, if --

16:34:18  24   hopefully receive another master's degree.

16:34:22  25       And it's not a matter of someone who goes to school

16:34:27   1   or someone who is educated necessarily needs a break.

16:34:33   2   It is a question of character, I think, that the Court

16:34:35   3   is looking at under the 3553 factors, and how the Court

16:34:40   4   balances what is needed in this case or what the Court

16:34:43   5   must consider along with the nature and circumstances of

16:34:48   6   the offense.

16:34:50   7       I think that this case represents something a bit

16:34:56   8   different from what we usually see in the typical fraud

16:34:59   9   case.  The typical fraud case is someone who is trying

16:35:03   10  to get something for nothing.

16:35:08   11      Now we respect the jury's verdict and we understand

16:35:10   12  the government's theory and the government's -- and the

16:35:14   13  government's proof.

16:35:14   14      We are going to appeal this case, but nevertheless,

16:35:17   15  even under the government's theory, this was not a

16:35:20   16  matter of making misrepresentations for the purposes of

16:35:27   17  getting something for nothing.

16:35:29   18      Under the government's theory, there were

16:35:31   19  misrepresentations that were made, there were rules that

16:35:33   20  were not followed.  But there was not an indication that

16:35:38   21  Ms. Morales intended to take anything from the National

16:35:42   22  Guard that she did not earn.  And I think that was the

16:35:46   23  undisputed testimony at trial.

16:35:50   24      And the Court makes reference, and I understand, to

16:35:53   25  the fact that there were time sheets that were submitted

16:35:57  1    for two entities.  But the issue of when she performed

16:36:01  2    the work, if the Court were looking at it as to not when

16:36:06  3    the work was performed, but whether in fact she did the

16:36:09  4    job, I don't think that there's any dispute, and I think

16:36:14  5    the Court is to some extent recognizing that.

16:36:19  6         And if we look at the testimony, not only her

16:36:23  7    superior, General Lewis, but also others who -- in the

16:36:28  8    same entity who talked about her working the long hours

16:36:31  9    that she did, and her own testimony, I don't think was,

16:36:36  10   to some extent in terms of what she did over the

16:36:38  11   weekends and what she did and how late she would work at

16:36:41  12   night.

16:36:42  13        And it's also reflected in the letters, in the

16:36:46  14   medals, in the commendations that we submitted as

16:36:50  15   attachments in this case over and over again.  And even

16:36:56  16   letters from government, at least one government

16:37:04  17   witness, indications of her getting a pay raise, showing

16:37:08  18   her accomplishments, providing service to the service

16:37:11  19   members who were returning after deployment.

16:37:16  20        We see the letters from her mentees, her proteges,

16:37:20  21   we see the letters from family members.  And we also,

16:37:25  22   while we don't want to make a spectacle of it,

16:37:33  23   Ms. Morales has shared in her pleadings things that she

16:37:35  24   has not necessarily shared with everyone.  But she has

16:37:42  25   struggled and, in her life, and starting out as a young

girl who was not really sure what she wanted to do, and
used the military as a springing board, and took what
she learned there, learned how to be a professional, and
spread that to others in the community.

   She has a family.  She was married twice to
Mr. Pedro Morales.  He explains how proud -- of many of
the proud moments that he shared with her, both when
they both served in the National Guard together and
while he was married to her, and they remain the best of
friends now.

   Now, in terms of deterrence in a case like this,
Your Honor, this is, I believe, in the government's
view, an economic crime.  This was not a crime certainly
that Ms. Morales engaged in to hurt anyone.  And the
Court can certainly, if in fact it was for, as the
government alleges, for economic gain, and certainly we
all want to be paid for the work that we do, and
certainly in this case Ms. Morales was paid, the Court
can deter people who commit these type of offenses and
send a message out to the public that you would be hurt
economically.  The Court can impose fines.

   The Court can look at the fact that Ms. Morales has
this exemplary -- I just -- it's been a long time since
I've been before the Court with someone who has this
record of community service, and impose not only that

16:39:28  1    she continue to work, but that she work for free, that

16:39:32  2    she continue, that she be required to spend many hours,

16:39:38  3    hundreds of hours, providing her services to the

16:39:41  4    community.

16:39:43  5        And, Your Honor, as stated in Gall versus United

16:39:48  6    States, probation is not a free ride.  It is a restraint

16:39:53  7    on liberty --

16:39:55  8            THE COURT:  Level C probation isn't available,

16:39:59  9    is it?

16:40:00  10           MR. JUPITER:  Your Honor, we're asking for a

16:40:02  11   variance from the Guidelines.  In Zone C, the Court can

16:40:07  12   impose a sentence of incarceration -- Your Honor,

16:40:11  13   probation is not, as a Guideline sentence, you're

16:40:15  14   correct, Your Honor.

16:40:16  15       But the Court can give a mixed sentence by, for

16:40:22  16   instance, if the Court were going to give a Guideline

16:40:26  17   sentence, the Court can impose a sentence of 12 months,

16:40:31  18   but -- actually impose a sentence of 6 months

16:40:33  19   imprisonment and impose supervised release, with

16:40:37  20   6 months being in -- served in home detention.

16:40:43  21       So the Court can substitute up to half of the

16:40:47  22   sentence with either home incarceration or community

16:40:50  23   incarceration.

16:41:02  24       So, Your Honor -- and I think that goes to the

16:41:05  25   other factor in the Guidelines, in terms of the types of

16:41:08  1    sentences.

16:41:09  2         Ms. Morales is not a follower.  She is a leader.

16:41:13  3    She has no prior criminal history.  She's 55 years old

16:41:20  4    and has an exemplary record to the St. Croix community,

16:41:26  5    as well as to the Washington, DC, metropolitan community

16:41:31  6    that she lives in now.

16:41:33  7         For these reasons, Your Honor, we would ask that

16:41:35  8    the Court vary from the Guideline only slightly.

16:41:38  9    Because I think in order to give a sentence of probation

16:41:41  10   the Court would only be varying by about two levels to

16:41:45  11   go into Zone B, and the Court could in fact impose a

16:41:49  12   sentence in Zone B, which she is not in right now.

16:41:54  13        But the Court could impose a sentence of probation

16:41:56  14   with home detention.  And we think that would not only

16:41:59  15   serve the community better, it would deter this type of

16:42:03  16   conduct.

16:42:03  17        The Court can impose a fine and the Court can

16:42:06  18   impose that she work for free with community service,

16:42:11  19   and that would certainly be much more constructive in

16:42:15  20   this case.  And it would allow her to gain the education

16:42:18  21   that she has already -- educational achievements that

16:42:22  22   she has already started a few years ago and is about to

16:42:26  23   complete in six months.

16:42:34  24        THE COURT:  Okay.  Thank you, Attorney Jupiter.

16:42:37  25        Does your client wish to make a statement?

16:42:40    1          MR. JUPITER:  Yes, Your Honor.

16:42:40    2

16:42:47    3             ALLOCUTION BY THE DEFENDANT

16:42:47    4          THE DEFENDANT:  Good afternoon, Your Honor.

16:42:48    5          THE COURT:  Good afternoon.

16:42:49    6          THE DEFENDANT:  I spent 21 years in the Virgin

16:42:53    7    Islands National Guard, and became known for my

16:42:56    8    integrity and tireless worth ethic.

16:42:59    9       The work I completed as a civilian technician and

16:43:03   10    as a contractor was substantiated by both the Virgin

16:43:07   11    Islands National Guard and the Military Personnel

16:43:13   12    Service Corp.

16:43:13   13       I regularly worked 12 to 14 hours a day, and I

16:43:18   14    conducted briefing to service members on the weekends.

16:43:20   15       I dedicated my weekends to my work with the

16:43:24   16    Military Personnel Services Corp, and was responsible

16:43:28   17    for safeguarding the employment rights for our service

16:43:31   18    members returning home from deployment overseas.

16:43:34   19       It only made sense to conduct the briefings with

16:43:38   20    members of our military on the weekends, since they

16:43:42   21    mostly held positions for which they had to report at

16:43:48   22    9:00 to 5:00 or 8:00 to 5:00, as did their spouses who

16:43:53   23    were also briefed about benefits and entitlements.

16:43:59   24       Fast-forward to the here and now.  I served the

16:44:02   25    community in Washington, DC, by doing pro bono work for

16:44:08 1    two youth organizations, DC Scores and the Latin America

16:44:14 2    Youth Council of Washington, DC.

16:44:16 3        I have always believed in growing, learning and

16:44:18 4    continuing my education.  I am six months away from

16:44:22 5    earning a second master's degree, and will graduate with

16:44:25 6    an MBA from George Mason University in May of 2016.

16:44:31 7    Currently my GPA is 3.6.

16:44:34 8        I feel that I have been a productive person, and I

16:44:38 9    offer that I can do so much more.

16:44:41 10        I respect the decision of the jury and I

16:44:44 11   respectfully ask that if His Honor is to impose further

16:44:50 12   measures, that you allow me to be a part of the solution

16:44:54 13   by allowing me to contribute in another way, by

16:44:58 14   educating others about the pitfalls of defense

16:45:02 15   contracts, and the potential for conflicts of interest.

16:45:07 16        Recently I have been following the story of Huma

16:45:12 17   Abedin.  While working for Former Secretary Clinton as

16:45:15 18   deputy chief of staff at the State Department, she

16:45:19 19   earned $135,000 as a federal employee, and also earned

16:45:28 20   $355,000 as a contractor the Teneo Corporation.

16:45:32 21        Though she was a subject of investigation, the

16:45:35 22   Justice Department determined that they were not going

16:45:37 23   to pursue this issue.

16:45:41 24        I am not Huma Abedin.  However, conducting these

16:45:45 25   briefings to other federal employees would allow me to

16:45:48  1    be a part of the solution and to contribute in another

16:45:50  2    way by ensuring that this doesn't happen to anyone else.

16:45:56  3        Because you subject yourself to criminal

16:45:58  4    prosecution, and it is devastating.  Even before the

16:46:04  5    trial takes place, you lose your freedom of movement,

16:46:07  6    your name is in the news, it tarnishes your reputation,

16:46:12  7    and your family is grossly affected.

16:46:15  8        I ask the Court for probation, community service or

16:46:19  9    any other sanction that Your Honor may deem

16:46:23  10   appropriate.

16:46:23  11       Thank you for this opportunity to address the

16:46:27  12   Court, and I ask for leniency on the Court's behalf.

16:46:33  13           THE COURT:  Thank you, Ms. Morales.

16:46:36  14       Attorney Potter.

16:46:45  15               ALLOCUTION BY THE GOVERNMENT

16:46:45  16       MR. POTTER:  Thank you, Judge.

16:46:47  17       Your Honor, Ms. Morales, as she just stated, she

16:46:51  18   has a 3.6 GPA average in her master's program at George

16:46:58  19   Mason University.

16:47:02  20       Now, Judge, many different types of individuals

16:47:06  21   come before you for sentencing, those who have no

16:47:13  22   education and have committed various offenses; and also,

16:47:21  23   Judge, those who are highly educated and also commit

16:47:29  24   various criminal offenses.  And in appearing before Your

16:47:38  25   Honor, I know that one of the mantras of this Court is

16:47:45   1   that we are fair to everyone and we treat everyone the

16:47:52   2   same.

16:47:54   3       Now, because someone has -- someone is highly

16:47:59   4   educated, is successful in their endeavors and in their

16:48:07   5   employment, and live life better than most who come

16:48:11   6   before this Court, they still are to be treated the same

16:48:20   7   as anyone else.

16:48:23   8       Ms. Morales has not indicated that she made a

16:48:30   9   mistake, committed error.  She has taken -- appears to

16:48:40   10  have taken no responsibility for her fraudulent

16:48:49   11  conduct.

16:48:53   12      A jury of her peers heard this case.  Ms. Morales

16:48:57   13  took the witness stand.  She spoke about her employment

16:49:02   14  with the National Guard.  She spoke of her employment

16:49:06   15  with the MPSC.

16:49:10   16      And one of the things that Ms. Morales attempted to

16:49:13   17  say when she was on the witness stand was that she was

16:49:18   18  an independent contractor, meaning, in the context of

16:49:23   19  this case, she's an independent contractor.  She sets

16:49:28   20  her own hours.  She gets the job done whenever and

16:49:35   21  however she could get the job done.  8:00 to 5:00,

16:49:38   22  Monday through Friday does not apply to her.

16:49:44   23      So she references Huma Abedin as if she and Huma

16:49:53   24  Abedin are similarly situated.  But I don't know all the

16:49:58   25  facts of Huma Abedin, but maybe Huma Abedin was in fact

16:50:06   1   truly an independent contractor, who was working and

16:50:12   2   doing work for herself.

16:50:17   3        Ms. Morales, at the time of trial, indicated how

16:50:25   4   accomplished she was.  She listed all of her

16:50:29   5   accomplishments within and without the Guard.  She

16:50:35   6   mentioned that she was the human resource officer for

16:50:39   7   the Guard at some period of time.  She mentioned that

16:50:41   8   she had negotiated, I think, employment -- collective

16:50:47   9   bargaining agreements, if my memory serves me correctly.

16:50:51   10        And for all of this, Your Honor, one day

16:50:57   11   Ms. Morales sat and said to herself:  I am going to

16:51:08   12   commit a fraud.  I am now working for the MPSC.  I am

16:51:14   13   going to attempt to get the National Guard to hire me,

16:51:21   14   also full-time.  And I am going to pretend, probably for

16:51:26   15   as long as I can get away with it, that I am

16:51:30   16   volunteering for the MPSC, but working full-time for the

16:51:35   17   National Guard.

16:51:36   18        And that is what Ms. Morales did.  I think two or

16:51:41   19   three witnesses took the stand and indicated on at least

16:51:48   20   the three occasions where Ms. Morales would indicate to

16:51:50   21   them that, Oh, I am just volunteering for the guard --

16:51:54   22   sorry -- for the MPSC.  I am doing volunteer work.

16:51:59   23        If she in fact thought that she was an independent

16:52:02   24   contractor, she would have told them:  Oh, no, I'm doing

16:52:06   25   some contract work with the MPSC, and that's why I am

16:52:14  1     here or that's why I'm talking to you.

16:52:17  2         She didn't say that.  So she was being deceitful

16:52:21  3     and deceptive.

16:52:22  4         So when she took the stand, Judge, to me it shined

16:52:26  5     the light on Ms. Morales, her many years of

16:52:31  6     accomplishments in the Guard, her good name, her

16:52:38  7     community involvement, it -- a sort of a low cloud hung

16:52:49  8     over her at that point, because she was being deceptive,

16:52:52  9     again, and she was trying to pull one on the jury.  And

16:52:57  10    of course, the jury saw right through Ms. Morales.

16:53:04  11        The Guideline range for Ms. Morales is 12 to

16:53:09  12    18 months.

16:53:14  13        Ms. Morales is asking for community confinement.

16:53:19  14    We reject that, Judge.  Ms. Morales deserves a Guideline

16:53:28  15    sentence, and we would ask the Court to impose such a

16:53:31  16    sentence.

16:53:31  17             THE COURT:  Thank you, Attorney Potter.

16:53:33  18        Will the defendant come to the lectern, please.

16:53:33  19             IMPOSITION OF SENTENCE BY THE COURT

16:53:40  20             THE COURT:  Having considered the advisory

16:53:42  21    Guideline range of 12 to 18 months, which is based on an

16:53:45  22    offense level of 13 and a criminal history category of

16:53:50  23    1, as well as the sentencing factors enumerated at

16:53:53  24    Title 18 Section 3553 -- those factors require that the

16:53:58  25    Courts consider several things.

16:54:01   1      For instance, the Court must consider the nature

16:54:02   2    and circumstances of the offense.

16:54:04   3      Here, the Court notes that this is a white-collar

16:54:07   4    offense.  That does not mean it is any less

16:54:11   5    objectionable than any other violation of the US Code.

16:54:18   6    And it involved submitting documents and things in order

16:54:28   7    to receive payment for the same time period.

16:54:34   8      That is troubling, because any scheme or artifice

16:54:42   9    to defraud the United States is a serious offense, which

16:54:46   10   the Congress has indicated by the sentencing options

16:54:49   11   available for those types of offenses.

16:54:52   12     The Court has to consider the history and

16:54:54   13   characteristics of the defendant.

16:54:55   14     And here the Court notes that there are no brushes

16:54:58   15   with the law.  And there is certainly a wealth of

16:55:07   16   information that indicates that the defendant has

16:55:09   17   acquitted herself well but for this incident.

16:55:15   18     At the same time, the Court is mindful, as the

16:55:20   19   government indicates, that for someone in the

16:55:23   20   defendant's position there is a lot of information that

16:55:28   21   the defendant has at her disposal, and one would

16:55:34   22   certainly expect that the defendant would be certainly

16:55:38   23   cautious in this regard.

16:55:41   24     It's not entirely clear to the Court that that

16:55:43   25   level of caution was something that attended while the

16:55:48  1    defendant undertook the conduct for which she was

16:55:52  2    convicted.

16:55:53  3         The Court has to impose a sentence that will

16:55:57  4    promote respect for the law, deter this type of conduct.

16:56:02  5    And the Court has to impose a sentence that will achieve

16:56:06  6    the objectives of the Sentencing Commission and impose a

16:56:09  7    sentence no more severe than is required to do that.

16:56:12  8         The Court also has to impose a sentence that will

16:56:15  9    achieve parity with similarly-situated individuals.

16:56:21  10        And the Court has reviewed the records of many that

16:56:25  11   have been sentenced for this type of offense, and the

16:56:30  12   Court notes that the sentence imposed is tied very

16:56:34  13   closely to the amount of loss.  I suspect that's why

16:56:40  14   there was so much appropriate consideration of the loss

16:56:45  15   amount.  But we have had ranges from 130 months,

16:56:52  16   30 months, 37 months, 35 months, 125 months, in this

16:56:57  17   Court.

16:56:58  18        And again, those were for cases that I included

16:57:04  19   amounts that were much larger than that before the Court

16:57:08  20   now, and in some cases a level of planning and

16:57:11  21   organization that included other enhancements.

16:57:16  22        This is not quite at that level, but nonetheless it

16:57:20  23   is a serious offense.

16:57:22  24        So having considered those several factors and

16:57:25  25   pursuant to the Sentencing Reform Act of 1984, it is the

16:57:30  1    judgment of the Court that the defendant, Sherrymae

16:57:34  2    Morales, be committed to the Bureau of Prisons, to be

16:57:39  3    imprisoned for a term of 12 months and 1 day.

16:57:49  4         The Court will make the following recommendations

16:57:51  5    to the Bureau of Prisons:

16:57:52  6         Pursuant to Public Law 108-405, the revised DNA

16:57:56  7    collection requirement under the Justice For All Act,

16:57:58  8    that the defendant submit to DNA collection while

16:58:00  9    incarcerated or at the direction of the U.S. Probation

16:58:03  10   Office.

16:58:04  11        While incarcerated, the defendant shall enroll in

16:58:06  12   some course of study.  It can be vocational, college

16:58:09  13   prep or technical.

16:58:10  14        Following her release from imprisonment, the

16:58:12  15   defendant shall be placed on supervised release for a

16:58:14  16   term of three years.  While on supervised release, the

16:58:18  17   defendant shall enroll in some course of study.  It can

16:58:22  18   be vocational, college prep or technical.

16:58:24  19        Additionally, the defendant, while on supervised

16:58:29  20   release, shall comply with the standard conditions of

16:58:31  21   supervised release as recommended by the US Sentencing

16:58:34  22   Commission, which conditions have been adopted by this

16:58:36  23   Court and will be made a part of the Judgment and

16:58:41  24   Commitment Order.

16:58:41  25        While on supervised release, the defendant shall

16:58:44  1    perform 200 hours of community service.  It can be with

16:58:48  2    an entity such as My Brother's Workshop,

16:58:51  3    Catholic Charities, or some similar organization as may

16:58:55  4    be directed by the US Probation Office.

16:58:58  5         Additionally, as a condition of supervised release,

16:59:01  6    the defendant shall pay restitution.  The Court will

16:59:06  7    make a restitution order in the amount of $45,426.

16:59:12  8         The restitution payee shall be the US Virgin

16:59:16  9    Islands National Guard.

16:59:17  10        Payment shall be in monthly installments, as may be

16:59:20  11   determined by the US Probation Office.

16:59:23  12        The defendant shall provide the Probation Office

16:59:25  13   with her personal, business, financial information as

16:59:29  14   may be requested.

16:59:34  15        The defendant, while on supervised release, shall

16:59:36  16   not commit another federal, state, or local offense.

16:59:41  17        The defendant -- the Court finds the defendant does

16:59:44  18   not have the financial ability to pay a fine, the costs

16:59:46  19   of imprisonment or costs of supervision.  Therefore,

16:59:49  20   such fine and fees are waived.

16:59:51  21        It is further ordered that the defendant shall pay

16:59:53  22   a special assessment in the amount of $2,100, which is

16:59:59  23   due and payable immediately.

17:00:17  24        Sherrymae Morales, you've been sentenced on your

17:00:20  25   counts of conviction.  It is important that you are

17:00:22  1    aware that you have 14 days to appeal your sentence.

17:00:25  2    You may do so through your attorney.  If for some reason

17:00:28  3    you are unable to do that through your attorney, you may

17:00:30  4    contact the Clerk's Office and an appeal will be noted

17:00:34  5    for you.

17:00:35  6         I note the sentence is not quite what your attorney

17:00:39  7    recommended, but it is not the most severe sentence

17:00:43  8    under the statute or under the Guideline.  But I think,

17:00:49  9    as the Court has to do in every sentence, the Court has

17:00:52  10   to weigh those several factors that I outlined.

17:00:55  11        And I think there is certainly more to the story

17:01:01  12   than this event.  I think, as your attorney points out,

17:01:05  13   I hope that you'll reflect on where you are now and

17:01:09  14   certainly make every effort to avoid this sort of

17:01:15  15   circumstance in the future.

17:01:16  16        Let me add one thing to the community service order

17:01:23  17   portion of the sentence.  The 200 hours, I indicated may

17:01:30  18   be fulfilled with some organization such as the Catholic

17:01:35  19   Charities or My Brother's Workshop.  It can also be

17:01:42  20   fulfilled, and the Court will require, that at least

17:01:48  21   50 hours of that time be used to address and lecture

17:01:51  22   others who may be in a position or who need some sort of

17:01:55  23   guidance in avoiding this sort of pitfall.

17:02:04  24        The defendant is remanded to the custody of the

17:02:06  25   United States Marshal's Service pending her designation.

17:02:10  1          MR. JUPITER:  May I be heard on that, Your

17:02:13  2   Honor?

17:02:14  3          THE COURT:  Yes.

17:02:14  4                   FURTHER PROCEEDINGS

17:02:14  5          MR. JUPITER:  Your Honor, we did file a motion

17:02:16  6   today for release pending appeal, in the contingency

17:02:22  7   that the Court did sentence, as the Court has sentenced,

17:02:25  8   Ms. Morales to custody.

17:02:26  9      We -- and also in light of the rulings that the

17:02:31  10  Court made today with the loss amount, Your Honor,

17:02:36  11  18 USC section 3143(b)(1), it provides -- I'm not going

17:02:43  12  to read the whole statute, but it provides for the

17:02:46  13  release of the person pending appeal, if the judicial

17:02:49  14  officer finds, and the first prong of it is clear and

17:02:53  15  convincing evidence that the person is not likely to

17:02:58  16  flee, pose a danger, the appeal is not for purposes of

17:03:02  17  delay and will result in reversal or -- Your Honor, I

17:03:07  18  think the strongest argument here -- reduce sentence to

17:03:11  19  a term of imprisonment less than the total of time

17:03:14  20  already served, plus the expected duration of the

17:03:17  21  appeals process.

17:03:19  22      Your Honor, Ms. -- if the Court requires remand

17:03:26  23  now, Ms. Morales's appeals process -- we filed a notice

17:03:31  24  of appeal today -- I think is most likely to last over a

17:03:35  25  year, and any appeal would be fruitless.

17:03:42   1       We also believe we made arguments, the standard

17:03:46   2   that the Court needs to look at with regards to the

17:03:48   3   substantial issue is not necessarily that the Court

17:03:50   4   believes it's wrong, but that there is a novel question

17:03:55   5   that can be -- that will be presented by the Court of

17:03:58   6   Appeals, and particularly with regard to this loss

17:04:03   7   amount and the new, and the determinations with regard

17:04:09   8   to whether or not I guess the Court had to make a

17:04:13   9   determination today, and I think the Court will admit

17:04:16 10   that there was very little case law, Third Circuit case

17:04:19 11   law on this issue.  So I do think it does present a

17:04:22 12   novel issue.

17:04:24 13       And Ms. Morales, as we put in our motion, does not

17:04:28 14   present any type of a flight risk.  All her family is

17:04:32 15   both here and in Washington, DC.  She has been on

17:04:36 16   trial -- on pretrial release.  She has no conditions

17:04:40 17   violated.  She has -- and I think the record speaks for

17:04:44 18   itself with regard to this, there's no danger of

17:04:47 19   fleeing, no danger of flight.

17:04:51 20       So considering that and any appeal that she may win

17:04:55 21   will be fruitless, because by the time it would have

17:04:59 22   been resolved she would have served the sentence, we

17:05:03 23   would ask that she be allowed to remain on her current

17:05:06 24   bond.

17:05:07 25       Or if the Court wants some security, her

17:05:10  1   ex-husband, Pedro Morales, who lives here in St. Croix,

17:05:14  2   is willing to post his house, that he owns without any

17:05:18  3   lien on it.  He has property here that has equity of

17:05:27  4   $150,000 in it.  So we would ask that be taken into

17:05:30  5   consideration.

17:05:31  6       In the alternative, Your Honor, we ask that

17:05:33  7   Ms. Morales, if the Court is not going to do that, that

17:05:36  8   she be allowed to turn herself in to the -- directly to

17:05:40  9   the facility where she would be designated.

17:05:44  10       THE COURT:  All right.  Well, I'll note this --

17:05:46  11   I'll give the government a chance, but the Court is not

17:05:51  12   inclined to have the defendant report to the facility

17:05:57  13   where she may be designated.

17:06:00  14       The other concern that the Court has is that the

17:06:03  15   3143 factors require the Court to make a finding -- this

17:06:09  16   is assuming that the defendant is not a flight risk --

17:06:12  17   that the appeal is not for delay and will result in

17:06:18  18   reversal, order for new trial, a sentence that does not

17:06:23  19   include a term of imprisonment, or a reduced sentence to

17:06:28  20   a term of imprisonment less than the total time already

17:06:32  21   served, plus the expected duration of the appeal

17:06:37  22   process.

17:06:37  23       I don't believe there's been any time served at

17:06:39  24   this point.  Is that correct?

17:06:42  25       MR. JUPITER:  Well, I think that any time

17:06:43 1     she's -- she's been arrested, so I think there's one day

17:06:47 2     that she should be credited -- one day; and she should

17:06:51 3     be credited for all the days that she's had to come to

17:06:54 4     court.  That's -- I think the Court has discretion to do

17:06:56 5     that.

17:06:57 6            THE COURT:  Days coming to court are for speedy

17:07:00 7     trial purposes, not for imprisonment purposes.  I don't

17:07:04 8     believe they count for imprisonment purposes.

17:07:07 9            MR. JUPITER:  The Court has discretion to find

17:07:10 10    that days that she was required to come to court could

17:07:14 11    be credited.

17:07:15 12        But, Your Honor, in terms of her actually -- other

17:07:18 13    than her being taken into custody, just for the purposes

17:07:21 14    of arrest and being booked, that's one day.  But

17:07:26 15    nevertheless, her entire sentence, if she's remanded

17:07:31 16    today, her entire sentence will be served before her

17:07:35 17    appeal is resolved.

17:07:37 18        So I think that both, all factors are relevant with

17:07:44 19    regard to whether or not -- the whole point of it is, is

17:07:50 20    that, is this situation where someone should be able to,

17:07:54 21    should be able to enjoy the benefits of their appeal in

17:07:59 22    case -- and particularly in this instance, where the

17:08:02 23    Court is digging into I think relatively new ground.

17:08:09 24            THE COURT:  Okay.

17:08:10 25        Attorney Potter?

17:08:10   1          MR. POTTER:  Your Honor, we believe that --

17:08:16   2     well, first of all, we object to Ms. Morales remaining

17:08:20   3     out pending appeal.  We don't think that there's a basis

17:08:25   4     for it.

17:08:27   5          The second part of 3143(b), there's no, nothing

17:08:33   6     before this Court which would suggest that the jury's

17:08:36   7     verdict would be reversed.  I don't know if there are

17:08:40   8     any facts in dispute that will cause an Appeals Court to

17:08:50   9     reverse Ms. Morales's conviction or order a new trial.

17:08:56   10         Ms. Morales is sentenced to 12 months.  I don't

17:09:00   11    know that a basis for keeping someone out pending appeal

17:09:04   12    is so that their appeal -- the hearing date for the

17:09:13   13    appeal will occur after the defendant has been released.

17:09:18   14    That's not what the statute requires.  It requires some

17:09:23   15    substantial likelihood that a reversal will follow or a

17:09:32   16    new sentence below what she is presently given would be

17:09:36   17    imposed.

17:09:36   18         I don't think that there's anything in the record

17:09:38   19    that suggests that.  I think that the Court's sentencing

17:09:44   20    Ms. Morales within the Guideline range is appropriate,

17:09:49   21    and I don't see that there's anything that would

17:09:53   22    suggest -- whether or not this is a novel or not novel

17:09:55   23    argument, the calculation of loss is something that the

17:10:04   24    Appeals Courts give great deference to the trial court

17:10:09   25    judge.  Based on that, Judge, there's no basis for

17:10:12   1    Ms. Morales to remain out pending appeal.

17:10:15   2             THE COURT:  I appreciate the defense's

17:10:17   3    position.  I'm not persuaded by it, though.

17:10:19   4        I think, to think that 3143, in its application

17:10:23   5    under these circumstances, would require the Court to

17:10:26   6    make a finding of several things, or one of several

17:10:35   7    things in the second prong of the 3143 test.

17:10:41   8        And the Court doesn't find that there is a

17:10:48   9    likelihood of a reversal, an order for a new trial, a

17:10:51   10   sentence that does not include a term of imprisonment,

17:10:54   11   or reduced sentence to a term less than the total of the

17:10:57   12   time already served, plus the expected duration of the

17:11:00   13   appeal process.

17:11:04   14       And also, the Court will note that the Court has to

17:11:08   15   maintain parity with similarly-situated defendants.  And

17:11:13   16   where there has been no such finding, the Court has not

17:11:17   17   allowed a defendant to remain out pending appeal.

17:11:23   18       So the defendant is remanded.

17:11:26   19       All right.  Thank you, Counsel.

17:11:28   20            MR. POTTER:  Thank you, Judge.

           21       (Court in recess, 5:11 p.m.)

           22

           23

           24

           25

1

2

3                          <u>CERTIFICATE</u>

4

5           This document is hereby certified

6          to be a true and accurate transcript

7            of the foregoing proceedings.

8

9

10    /s_____     _____
                    Chandra Kean, RMR                DATE
11              Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25